| | | |
|---|---|---|
| LIBERTY SURPLUS INSURANCE | ) | |
| CORPORATION, as Subrogee of | ) | |
| NORTHERN ILLINOIS TERRAZZO | ) | |
| & TILE CO. and POWER | ) | No. 17 C 3176 |
| CONSTRUCTION, and as Assignee of | ) | |
| NORTHERN ILLINOIS TERRAZZO | ) | **Chief Judge Rubén Castillo** |
| & TILE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CUSTOM BUILDING PRODUCTS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are motions in limine filed by Plaintiff Liberty Surplus Insurance
Corporation ("LSIC"), as subrogee of Northern Illinois Terrazzo & Tile Co. ("NITT") and Power
Construction ("Power") and as assignee of NITT, and Defendant Custom Building Products
("CBP") The Court addresses each motion separately below.

## LEGAL STANDARDS

Trial courts have considerable discretion to manage the submission of evidence,
including granting motions in limine. *See Luce v. United States*, 469 U.S. 38, 41-42 (1983);
*Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In limine rulings serve "to
ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v.
Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Such motions are not
favored, however, and the Court should grant a motion in limine "only when evidence is clearly
inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp.

1398, 1400 (N.D. Ill. 1993). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* Additionally, the Court has authority to reconsider its in limine rulings as "the case unfolds." *Luce*, 469 U.S. at 41. "Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42; *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) ("[T]he district court may adjust a motion in limine during the course of a trial.").

Under Federal Rule of Evidence 401, evidence is deemed relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401(a)-(b). Under Rule 403, the Court has authority to exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## ANALYSIS

### A.    Defendants' Motions in Limine

####    1.    CBP's Motion in Limine No. 1

CBP moves to exclude all witnesses except designated party representatives who are not testifying from being present in the courtroom during trial. (R. 75.) LSIC does not oppose this motion so long as the bar applies to all parties. (R. 114.) The Court agrees, and the motion is granted.

### 2. CBP's Motion in Limine No. 2

CBP seeks to bar all speaking or argumentative objections in the presence of the jury (R. 76). LSIC does not oppose this motion so long as the bar applies to all parties. (R. 114.) The Court agrees, and the motion is granted.

### 3. CBP's Motion in Limine No. 3

CBP moves to bar reference to the fact that it may be insured for the claims made by LSIC. (R. 77.) LSIC does not oppose this motion so long as the bar applies to all parties. (R. 114.) The Court agrees, and the motion is granted.

### 4. CBP's Motion in Limine No. 4

CBP seeks to bar any reference to inconsistent "Uncoupling Mat Mortar" mixing throughout the construction process, based on the argument that NITT's president John D'Agnolo ("D'Agnolo") testified at his deposition that during installation, NITT's craftsmen did not follow the instructions provided by CBP for mixing the mortar but instead consistently mixed the mortar until it "held a notch." (R. 79.) LSIC opposes the motion as based on an inaccurate summary of D'Agnolo's testimony and a misinterpretation of CBP's mixing instructions which it says allow for adjustments after mixing the recommended portions. (R. 115.)

D'Agnolo's testimony does not dictate the result CBP suggests. D'Agnolo testified, "We followed the instructions and used a common-sense approach that all tile people use in that it states clearly on the instructions that you have to mix a certain amount of water, but ensure that the product holds a notch. So you apply the mortar with a square-notch trowel, and you want that notch that stands to stand up and not slump or fall." (R. 79-1, D'Agnolo Dep. Tr. at 38:16-22.) According to D'Agnolo, NITT started with two gallons of water per bag, and then reduced the water when that mixture wouldn't "hold a notch." (*Id.* at 38:23-40:02.)

The parties' dispute on this motion and several others discussed below boils down to their differing interpretation of CBP's mixing instructions. As CBP argues, its instructions specify mixing 2 gallons of water to the mortar mix, and instruct "not to add more water," but as LSIC observes, the instructions also direct, "[w]hen properly mixed, troweled ridges will stand with no slump." (R. 115 at 1-2.) According to LSIC, this latter part of CBP's instructions require adjustment of the water-mix ratio to achieve a troweled ridge with no slump. (*Id.* at 2.) LSIC reasons, therefore, that D'Agnolo did not testify NITT deviated from the instructions, but rather that it adhered to them. (*Id.*) A trier of fact could reasonably accept LSIC's position. Accordingly, the motion is denied.

### 5.    CBP's Motion in Limine No. 5

CBP seeks to bar any testimony, evidence or argument to any LSIC claim for contribution beyond $2,000,000 on the grounds that reference to the fact that anything beyond what LSIC seeks as contribution is not relevant or is at least outweighed by prejudice, and that it would confuse the jury. (R. 81.) This Court agrees. Any arguable relevance is substantially outweighed by a risk of unfair prejudice and confusing the issues. The motion is granted.

### 6.    CBP's Motion in Limine No. 6

Based on a similar argument to that raised in support of its fourth motion in limine—that NITT failed to follow its mixing instructions—CBP seeks in this motion to bar any evidence or argument that it failed to provide: (1) accurate information regarding the shear strength of its tile mortar, (2) tile mortar consistent with the job specifications, *i.e.*, consistent with American National Standards Institute ("ANSI") Standard A118.1, (3) accurate instructions for mixing the tile mortar, and (4) adequate instructions for mixing and applying its product. (R. 83.) In addition to the arguments raised in opposition to the fourth motion in limine, LSIC adds that even though

CBP's recommended water amount was "wrong," and "conflicting" with the directions to ensure the mixture held a notch, ANSI Standard 118.1 requires testing based on the manufacturer's recommended mix-water ratio. (R. 117 at 2-3.) For the same reasons as with Motion in Limine No. 4, this motion is denied.

### 7. CBP's Motion in Limine No. 7

Relatedly, CBP seeks to bar any evidence or argument regarding the shear testing it says was performed by LSIC's expert David Gobis ("Gobis") because it was based on a water-mix ratio of two gallons per mortar bag, which CBP insists NITT did not use at the job site, the Fashion Outlets of Chicago ("FOC"). (R. 84.) As a result, CBP says, any reference to the testing would be more prejudicial than probative and would merely serve to confuse or mislead the jury. (*Id.* at 2-3.) LSIC argues that the testing is relevant to whether the mortar mixed with the recommended water amount complies with ANSI 118.1, as well as whether the product was sufficiently strong when paired with Schluter's "DITRA" system to do what CBP marketed it to do. (R. 118.) This Court agrees. For these reasons as well as the reasons discussed with Motion in Limine No. 4, the motion is denied.

### 8. CBP's Motion in Limine No. 8

Similarly, CBP's Motion in Limine No. 8 seeks to bar evidence or argument regarding shear testing performed by the Tile Council of North America ("TCNA") that used Uncoupling Mortar Mix that was older than 12 months and a water-mix ratio of 2 gallons, which is different from what it says was used by NITT at the FOC. (R. 85.) This motion is DENIED for the same reasons as Motion in Limine No. 4, and because CBP presents no evidence to demonstrate the shelf-life of its mortar, the impact of the age of the product on shear strength, or the age of the

product that was used at FOC. Without such information, it cannot be said that the probative value of this TCNA sheer testing is outweighed by any risk of confusion or prejudicial effect.

**9.    CBP's Motion in Limine No. 9**

By this motion CBP seeks to bar undisclosed expert witness opinions. (R. 86). LSIC does not oppose this motion so long as the bar applies to all parties. (R. 114.) The Court agrees, and the motion is granted.

**10.    CBP's Motion in Limine No. 10**

Based on the same argument that the mix/water ratio used at FOC differed from the two gallons called for in its instructions, and that its petrographic testing indicates that the mortar at FOC was mixed with approximately six quarts (or 1.5 gallons) of water, CBP seeks to bar evidence or argument regarding any shear testing of its mortar mixed with any amount other than six quarts as irrelevant or at least more prejudicial than probative. (R. 87.) For the reasons discussed with Motions in Limine Nos. 4 and 7, the motion is denied.

**11.    CBP's Motion in Limine No. 11**

Similarly, CBP moves to bar any evidence or argument referring to the product specification displayed by CBP on its Uncoupling Mat Mortar Mix based on its position that NITT did not follow CBP's mixing instructions. (R. 88.) This motion is denied.

**12.    CBP's Motion in Limine No. 12**

By this motion CBP seeks to bar any evidence or argument regarding LSIC's expert's shear strength testing of competitors' products that are similar to CBP's Uncoupling Mix Mortar as irrelevant or at least more prejudicial than probative, and likely to confuse the jury. (R. 89.) LSIC argues such testing was necessary to determine the cause of the cracking at FOC; if non-CBP mortar performed similarly, it would suggest fault with the installation techniques or the

Schluter DITRA system. (R.122.) The Court is not convinced that such testimony would be confusing, and to the extent the evidence informed the expert's opinion, it is relevant. Any potential for prejudice can be addressed by a proper limiting instruction. Accordingly, this motion is denied.

### 13. CBP's Motion in Limine No. 13

CBP seeks to bar evidence or argument as to any undisclosed projected cost of repairs at FOC as untimely and prejudicial. (R. 90.) Specifically, CBP complains that LSIC's Rule 26 disclosures failed to disclose a foundation for its testifying experts Gobis or Terry Willems's differing opinions on cost of repairs or replacement, and that "D'Agnolo, Gobis and Willems failed to disclose any opinions as to the cost of repairs" during their depositions. (*Id.* at 2.) While LSIC concedes Willems is not qualified to testify as to cost of repairs, it otherwise opposes the motion, noting that it produced a proposal to replace the tile floor, that D'Agnolo does estimates and project bids on behalf of NITT, and that CBP could have asked D'Agnolo about costs at his deposition. (R. 123.) Notably, CBP failed to attach the complained of disclosures or any portion of Willems's deposition to its motion, and the excerpts of Gobis's and D'Agnolo's depositions do not demonstrate any attempt by CBP to explore repair or replacement costs during their depositions. (*See* R. 90.) The motion is granted as unopposed as to Willems, but it is otherwise denied.

### 14. CBP's Motion in Limine No. 14

Because the LSIC claims adjuster who negotiated the underlying settlement no longer works for LSIC, CBP seeks to bar evidence or argument regarding the basis of LSIC's negotiation and execution of the underlying settlement. (R. 91.) According to CBP, without the former claims adjuster, no foundation may be made at trial and "no witness has testified or is

able to testify as to their personal knowledge regarding any settlement negotiations and the amounts offered and/or accepted" by LSIC. (*Id.* at 2.) According to LSIC, however, D'Agnolo was personally involved in the settlement and could testify about it, and CBP might know that had it issued any written discovery in this case, or asked D'Agnolo about it at his deposition. (R. 124.) Because this Court agrees with LSIC, the motion is denied.

### 15. CBP's Motion in Limine No. 15

CBP seeks to bar any evidence or argument as to the reputation of TCNA, that it represents the "gold standard," or that it is the "secretariat of the tile industry." (R. 92.) Emphasizing that its experts deny knowledge of such things, CBP argues that any such reference by LSIC is "self-serving" and would confuse and mislead the jury into conflating TCNA with an actual standards-setting organization. (*Id.* at 2.) That the parties' experts have differing knowledge of and opinions about the reputation of TCNA is no reason to bar mention of it. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (testimony and written statements are "by their nature" self-serving). The parties may explore those differences at trial. Nor is the Court persuaded that the use of the phrase "gold standard," or "secretariat of the tile industry" would confuse or mislead the jury. Accordingly, the motion is denied.

### 16. CBP's Motion in Limine No. 16

CBP seeks to bar evidence or argument regarding the LSIC insurance policy under which LSIC settled the underlying claim against NITT on behalf of NITT and Power. (R. 95.) According to CBP, the motion should be granted "because Plaintiff has not produced an insurance policy demonstrating that the failure of the tile at the [FOC] was a covered event which required settlement." (*Id.* at 1.) But CBP failed to serve any written discovery requests at all, let alone any calling for production of the policy. (*See* R. 126.) The motion is denied.

17. **CBP's Motion in Limine No. 17**

CBP seeks to bar reference to any implied warranty of merchantability claim for damages beyond $35,631, arguing that its express warranty caps its potential liability at the product's purchase price, and that LSIC cannot meet the "supplier of information" exception to Illinois' economic loss doctrine which generally bars recovery in tort for purely economic damages. (R. 96.) LSIC argues in opposition that CBP has not demonstrated its claims are capped by the warranty, and in any event, two different exceptions to the economic loss doctrine apply to its claim (*i.e.*, that the damage resulted from a sudden or dangerous occurrence, and that it was proximately caused by intentional false representations). (R. 133 at 1-2.) Because CBP has not established that an express warranty caps any and all of LSIC's claims, the motion is denied.

18. **CBP's Motion in Limine No. 18**

Relatedly, CBP seeks to bar LSIC from referring to CBP as a supplier of information as that term is used in the context of the economic loss doctrine. (R. 97.) Although LSIC opposes the motion, it does so largely by arguing how it will meet two other exceptions to the doctrine. (R. 134.) Neither party frames their arguments in the context of admissibility of evidence at trial, but instead as largely unsupported summary judgment briefs. (R. 97; R. 134.) The issue on a motion in limine, however, is whether certain evidence is clearly inadmissible at trial. *See Hawthorne Partners*, 831 F. Supp. at 1400. This motion is denied.

19. **CBP's Motion in Limine No. 19**

By this motion, CBP seeks to bar reference to any damages predicated on breach of warranty beyond the mortar's purchase price, $35,631, because CBP's warranty caps its liability at that amount and bars recovery of consequential damages. (R. 98.) LSIC argues in opposition both that a different and more expansive CBP warranty might apply here, and that in any event,

the asserted warranty limitation is unconscionable given CBP's alleged intentional misrepresentation in conjunction with the sale of its Uncoupling Mix Mortar here. (R. 135.) As with Motion in Limine No. 18, these arguments go to the merits of the claims, not the admissibility of evidence at trial. This motion is denied.

**20.    CBP's Motion in Limine No. 20**

Based on its argument that NITT failed to follow its mixing instructions and that its warranty disclaims liability for "structural failure or workmanship that is not in accordance with . . . CBP published instructions," CBP seeks to bar any evidence or argument about a claimed breach of express or implied warranty. (R. 99 at 2; R. 99-2 at 8.) For the same reasons as with Motion in Limine No. 4, the motion is denied.

**21.    CBP's Motion in Limine No. 21**

Relatedly, CBP seeks to bar any evidence or argument as to any claim of breach of express warranty because CBP says NITT did not follow CBP's mixing instructions. (R. 100.) For the same reasons as with Motion in Limine No. 4, the motion is denied.

**22.    CBP's Motion in Limine No. 22**

CBP seeks to bar any evidence or argument referring to LSIC's attorney's engineering background as irrelevant, unhelpful, and confusing to the jury. (R. 101.) Although LSIC concedes "[t]he trial is not about [counsel's] background," it opposes the motion. (R. 128.) LSIC's attorney is not a witness, however, so his background is irrelevant. The motion is granted.

**23.    CBP's Motion in Limine No. 23**

Based on Gobis's deposition testimony that hollow sound testing is ultimately subjective and does not pinpoint the cause of any hollow sounds, CBP seeks to bar any evidence or

argument that refers to the standard devices and methods used when performing sound testing or the cause of any results of sound testing. (R. 102.) CBP also emphasizes Gobis's testimony regarding ASTM D4580 "Standard Practice for Measuring Delaminations in Concrete Bridge Decks by Sounding," and arguments about whether its own expert complied with the dictates of ASTM D4580 standard. (*Id.* at 2.) CBP makes no argument, however, that hollow sound testing is unreliable or that it does not do what Gobis testified it does, and the arguments it does make do not support the ruling that it seeks. This motion is denied.

### 24. CBP's Motion to Exclude Gobis from Testifying

CBP seeks to exclude Gobis from testifying, or at least to limit his testimony on the grounds that his opinions are neither reliable nor relevant. (R. 104.) According to CBP, Gobis's opinions are not reliable because: (1) the method he used to conclude that CBP's Uncoupling Mix Mortar did not meet ANSI 118.1 standard was not correctly applied to the facts of the case since he used a mix ratio different from what CBP says NITT used; (2) he lacks sufficient expertise to render an opinion on the presence of movement joints at FOC; and (3) he lacks sufficient expertise to render an opinion as to the cement content in the mortar. (*Id.* at 2.)

"The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). The Court's evaluation of proposed expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), is not intended to "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance

and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). The Court's inquiry is a flexible one and provides wide latitude as the Court performs its duty as "gatekeeper." *C.W. v. Textron, Inc.*, 807 F.3d 827, 834-35 (7th Cir. 2015). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

According to CBP, Gobis bases his opinion that CBP's Uncoupling Mix Mortar did not meet ANSI 118.1 on testing he performed at CTL Group, and on testing done by TCNA. (R. 104 at 3.) CBP complains that neither testing is reliable because the testing it says Gobis performed—laying a layer of mortar and then attempting to rip up the Schluter DITRA layer—was not "any approximation of a generally accepted scientific test," and that the testing TCNA performed was not based on the mix-water ratio present at the FOC site. (*Id.* at 3-4.) CBP's argument notwithstanding, Gobis testified only that he began his investigation by conducting this exercise in-house, and that based on his observations, he determined to get independent laboratory testing. (R. 104-3, Gobis Dep. Tr. at 40:04-12.)

As to CBP's challenge to the mix/water ratio used by TCNA, in turn, the law does not support exclusion on this ground. "The soundness of the factual underpinnings of the expert's analysis . . . [is a] "factual matter[ ] to be determined by the trier of fact[.]" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The Advisory Committee's Notes to Federal Rule of Evidence 702 provide:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the [Rule] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

FED. R. EVID. 702 advisory committee's note to 2000 amendments; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."). CBP will have the opportunity at trial to challenge Gobis's opinions based on the mix-ratio, and to present evidence contradicting whether that ratio was present at FOC.

According to CBP, Gobis should not opine as to movement joints or structural integrity at FOC because he is not a structural engineer and because his deposition testimony conflicts with a report he co-authored. (R. 104.) However, CBP failed to provide a sufficient excerpt of either document to support this assertion, and the cited portion of the report it did provide does not include the quote that CBP says it does. (*Compare* R. 104 at 5, *with* R. 104-1 at 2.) As to the cement content of the mortar, CBP similarly argues Gobis is unqualified to reliably opine because he is not a chemist. (R. 104 at 6.) According to LSIC, Gobis may testify as to these things, because of his extensive background in the field of ceramic tile, but other than asserting without citation that Gobis "has worked with almost every mortar in the ceramic tile industry," and that he has "made it a point of learning the compositions of mortars," LSIC does not explain the connection between Gobis's experience with ceramic tile and these particular subject matters. (R. 130 at 4-5.)

An expert may be qualified "by knowledge, skill, experience, training, or education[.]" FED. R. EVID. 702. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quotation omitted). In making this determination, a "court should consider a proposed expert's full range of practical experience as well as academic or technical training

when determining whether that expert is qualified to render an opinion in a given area." *Smith*, 215 F.3d at 718.

The Court is skeptical whether Gobis's experience qualifies him to opine as broadly as CBP anticipates he might, but the Court's analysis is hampered by the fact that neither CBP in its motion nor LSIC in its opposition frame their arguments in accordance with the rigors of analysis required under *Daubert* nor support their heavily fact-based arguments with adequate citations to the record. (*See, e.g.*, R. 104 at 5-6; R. 130 at 2-3.) Instead, the parties simply dispute each other's characterization of the evidence and correctness of each other's positions. (R. 104 at 5-6; R. 130 at 2-3.)

Cognizant that the burden falls on LSIC to establish the reliability of Gobis's opinions, *United States v. Saunders*, 826 F.3d 363, 368 (7th Cir. 2016), the Court is nevertheless constrained to deny the motion without prejudice given the paucity of its presentation. The Court reserves until trial a ruling on the specific admissibility of each of Gobis's opinions on movement joints and structural integrity at FOC, or on the cement content in CBP's mortar.

## B. Plaintiff's Motions in Limine

### 1. LSIC's Group Motions in Limine

The following LSIC Motions in Limine are granted as unopposed: Nos. 1, barring non-party witnesses from courtroom prior to testifying; and 5, permitting jurors to take and keep notes. (*See* R. 94; R. 109.)

The Court also grants the following motions to which CBP agrees so long as they apply to both parties (*see* R. 109): LSIC's Motions in Limine Nos. 2, barring opinion testimony from lay witnesses; 7, barring personal attacks by counsel; 9, barring the display of exhibits without notice; 10, barring reference to the parties' financial positions; 12, barring cumulative experts;

13, barring argument suggesting the unfairness of hindsight; 14, barring reference to counsel's personal beliefs; 15, barring suggestion that jurors place themselves in the parties' positions; 16, barring suggestion that counsel's pre-trial interview of witnesses was improper; 17, barring use of materials not exchanged in discovery; 18, barring the use of exhibits introduced through expert as substantive evidence; and 19, barring demonstrative exhibits without Court approval. (*See* R. 94; R. 109.)

The Court grants in part: LSIC's Motions in Limine Nos. 3, to the extent that the Court bars the introduction of witnesses or expert opinions not previously disclosed during discovery; and 4, to the extent that the Court bars any mention of settlement offers, negotiations or attempts to settle this litigation.

The Court denies LSIC's Motion in Limine No. 9, which seeks to bar any reference to Plaintiff's failure to sue other individuals or entities.

### 2. LSIC's Motion to Limit the Testimony of Michael Micalizzi

LSIC seeks to limit the testimony of CBP's technical director Michael Micalizzi ("Micalizzi") on numerous issues. (R. 80.) Although styled as a *Daubert* motion, LSIC makes almost no arguments that comport with a *Daubert* analysis, instead arguing that Micalizzi should be limited as follows: (1) from testifying about the various formulations of CBP mortars because he admitted that he lacks access to such information (*id.* at 2-3); (2) from testifying that Schluter approved the use of CBP's Uncoupling Mat Mortar at FOC because he lacks proof of it (*id.* at 3); (3) from testifying that Schluter's recommendation of where to place expansion joints is the cause of the mortar failure because he lacks sufficient expertise with the DITRA system (*id.* at 3-4); (4) from testifying about the Professional Consultants, International, LLC ("ProCon") report issued because it was prepared by a non-testifying expert and shared in the context of a

mediation (*id.* at 4); (5) from testifying about any testing by Amherst or Bob Mooring because CBP's counsel purportedly "disavowed" Mooring as an expert (*id.*); (6) from testifying that NITT failed to install a membrane under a tile without actually knowing if that tile was a replacement not installed by NITT (*id.*); (7) from testifying about a purportedly confidential test performed by mortar manufacturers and TCNA's laboratory because it is "confidential," and because CBP produced no documents about such tests (*id.* at 4-5). It is undisputed that Micalizzi has worked in the tile industry for 30 years, and has substantial expertise with ceramic tile and mortars. (R. 80 at 1.)

As to each of the issues LSIC raises, the Court holds as follows:

(1) This part of the motion is unopposed and is therefore granted. CBP concedes Micalizzi will not be called to testify on the formulation of CBP Uncoupling Mat Mortar.

(2) The motion is denied on this issue because it is a factual one as to which Micalizzi may testify based on personal knowledge.

(3) The motion is denied on this issue. Micalizzi's undisputed substantial expertise in the tile industry equips him to opine on the cause of the cracking at FOC, and any lack of experience with DITRA goes to the weight of his opinions, not their admissibility.

(4) The motion is granted on this issue, for the same reasons discussed in open court. (*See* R. 140.)

(5) The motion is denied on this issue. LSIC does not provide any information about the underlying report or testing, nor the related opinion as to which Micalizzi might testify. (R. 80.) Likewise, it presents no authority to support its assertion that disavowing (whatever that means) an expert renders a subsequent expert's reliance on the former's work product improper. (*Id.*) The issue is whether the work of others informs Micalizzi's own opinions in an area of his

expertise, and whether his inferential methods therefrom are reliable. *See generally Gopalratnam v. Hewlett-Packard Co.*, 877 F. 3d 771, 786-87 (7th Cir. 2017); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-87 (7th Cir. 2000). LSIC does not address these things or suggest that that the underlying studies themselves involved discretionary expertise that Micalizzi lacks. *See Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002).

(6) The motion is denied on this issue. LSIC's argument on this point goes to weight, not admissibility. *See Smith*, 215 F.3d at 718.

(7) The motion is denied on this issue. LSIC does not identify the challenged opinion, explain how it relies on "confidential" testing, or provide any fact in the record or legal argument to support exclusion on this basis. (R. 80 at 4-5.) *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" (internal quotations omitted)). According to CBP, moreover, the issue is a factual one as to which Micalizzi may testify based on personal knowledge.

### 3. LSIC's Motion to Bar the Testimony of Chad Fischer

LSIC seeks to bar CBP's proffered expert Chad Fischer from testifying because although LSIC concedes he is an expert in structural engineering, it argues he lacks sufficient expertise in ceramic tile or mortar to reliably offer opinions at trial. (R. 82.) According to LSIC, Fischer's opinions are unreliable, and he should be barred from testifying at trial because he: (1) conducted sounding tests that it says fail to comply with ASTM D4580's testing standard (*id.* at 3); (2) lacks sufficient experience with DITRA (*id.* at 4-5); (3) has different opinions than LSIC's expert Gobis about the removal of tile from DITRA, the fact that the removed tile still had the fleece attached to the DITRA, or the presence of movement joints at the FOC (*id.* at 4-6); (4) testified that ANSI 118.1 does not require following the manufacturer's recommended mixture

amounts for valid testing when it does (*id.* at 5-6); (5) testified incorrectly about CBP's advertised mortar shelf-life (*id.* at 6); (6) lacks knowledge of the formulations of various mortars (*id.*); (7) provided testimony about the impact of skylights that contradicts Micalizzi's testimony (*id.*); and (8) testified that because all of the mortar at FOC came from CBP, he would expect it to be consistent throughout the entire project (*id.* at 7-8).

As to Fischer's qualifications, CBP argues in opposition that Fischer's experience as a structural engineer equips him to testify as to the cause of the failure of the tile at FOC since it is a component of the structure. (R. 110 at 1-2.) CBP argues that over the course of his 18 years at ESI, Fischer has conducted thousands of investigations of distressed buildings and building products, that tile and other flooring products are regularly inspected in conjunction with this work, and that as is typical in his field, he routinely relies on third-party laboratory data in conducting engineering assessments. (*Id.* at 2.) Fischer testified that ESI often studies ceramic floors as part of its damage assessments, and that he personally has conducted about five to ten investigations focused solely on ceramic floors. (R. 82-1, Fischer Dep. Tr. at 24:04-15.)

Fischer's experience does not demonstrate he is unqualified to opine on the cause of the cracking at FOC. Notwithstanding LSIC's argument, there is no requirement that a witness be an expert of a particular type in order to provide testimony that is helpful to the jury. *See, e.g.*, *Smith*, 215 F.3d at 720. But the question presented however, is "not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (internal quotations and alterations omitted). Because LSIC has not identified with any particularity the contours of Fischer's anticipated testimony, any further ruling on its scope is deferred until trial.

Turning to LSIC's challenges to the reliability of Fischer's opinions about the tile failure, the following arguments go to the weight of his opinions, not their admissibility: whether Fischer's testing complied with ASTM D4580's testing standard; whether he is familiar with DITRA; whether he is familiar with the standards articulated in ANSI 118.1; and whether he is familiar with the shelf-life of CBP's mortar. LSIC is free to explore these alleged deficiencies in Fischer's opinions through cross-examination. "[T]he district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony." *Stollings*, 725 F.3d at 768. Similarly, LSIC's attack on Fischer's assumptions about the consistency of CBP's mortar at FOC and his lack of knowledge about variability in the manufacturing process also goes to the weight of his opinions, not their admissibility. "The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible." *Id.* Since the alleged shortcomings "are within the realm of a lay juror's understanding," it is for the jury to weigh the strength of Fischer's conclusions. *Id.* at 766.

Nor does any contradiction between Fischer's opinion and that of Micalizzi, or his disagreements with LSIC's expert Gobis provide a reason to exclude his testimony. To the contrary, the fact that different experts reach opposing conclusions from the same information does not render their opinions inadmissible. *Walker*, 208 F.3d at 589.

Finally, the motion is granted as unopposed as to Fischer's lack of qualifications to opine on the formulation of mortar.

For these reasons, the motion to bar Chad Fischer is granted in part, and denied in part.

4.     **LSIC's Motion to Bar Testimony that TEC Services Tests Complied with ANSI 118.1**

LSIC seeks to bar testimony that the tests conducted by TEC Services ("TEC") on CBP's mortar were done in accordance with ANSI 118.1. (R. 103.) Specifically, LSIC complains that

much of TEC's testing deviated from the standard set out in ANSI 118.1 in that the mix/water ratio used by TEC was not the 2 gallons of water per 50-pound bag recommended on CBP's product label, and because TEC was unable to insure a 1/8-inch-thick layer of mortar as ANSI 118.1 testing requires. (R. 103.) LSIC cites no evidentiary rule or otherwise presents any reason to bar such testimony. CBP does not focus on this omission, but instead opposes the motion by insisting that its deviation from the recommended mix/water ratio was "reasonable and necessary to accurately reflect the conditions at FOC." (R. 113.) Just as whether the mortar at FOC complied with ANSI 118.1, whether the testing performed by TEC is an issue of fact to be determined by the jury. The motion is denied.

### 5. LSIC's Motion to Bar Reference to ProCon Report

LSIC seeks to bar any witness from using or referring to a report prepared by its non-testifying expert Richard Goldberg ("Goldberg") and his company, ProCon, because Goldberg was retained for consulting purposes only, *see* FED. R. CIV. P. 26(b)(4)(D), and his report was only shared with CBP pursuant to Federal Rule of Evidence 408 and a confidentiality agreement executed by the parties in the context of mediation efforts. (R. 152.) The motion is granted.

### 6. LSIC's Motion to Strike Last Two Pages of Dep. Exh. 43

By this motion, LSIC seeks to bar presentation or reference to the jury of a document it says it received by email from CBP's counsel as a supplemental Rule 26 expert disclosure of Gregory Mowat ("Mowat"). (R. 151.) When LSIC took Mowat's deposition last week, however, Mowat denied preparing the document and testified that it appeared to be "either CTL or taken from the CTL report," and that he too had received the document by email from CBP's counsel. (R. 151-3, Mowat Dep. Tr. at 111:18-113:06.) LSIC therefore concludes that CBP must be improperly trying to introduce a document that was not created until after the discovery deadline.

(R. 151 at 2.) Although the Court is concerned about this turn of events, it need not reach the same conclusion. Based on his deposition testimony, Mowat cannot establish a foundation for the document, and thus it may not be admitted through him at trial. FED. R. EVID. 901(a). Accordingly, the motion is granted. Whether CBP can otherwise authenticate the document and explain its tardy and mislabeled production can be revisited at trial outside of the presence of the jury.

## PRETRIAL ORDER

The parties were ordered to submit a modified Pretrial Order, including a list of agreed and contested trial witnesses, a list of agreed and contested trial exhibits, motions in limine, and motions to bar by January 11, 2019. (R. 72.) On that date, LSIC filed a "Pretrial Memorandum" listing its "intended witnesses" and list of exhibits to be offered at trial but failing to indicate whether any witnesses or exhibits were agreed or contested, failing to describe certain exhibits with anything other than the number they were given during depositions, and otherwise failing to comply with this Court's order or Northern District of Illinois Local Rule 16.1. (R. 93.) CBP failed to file any form of a pretrial order on its own, and if it weighed in at all on LSIC's trial plans, it is not apparent from LSIC's submission. This Court will not allow the parties to proceed as if the Local Rules and the Court's orders were optional.

This Court reluctantly concludes that these parties are not ready to proceed into a fair, orderly and efficient trial at this time. Therefore, the Court has decided to vacate the current trial date and instead have the parties' concentrate on preparing an appropriate final pretrial order, with a list of agreed and disputed witnesses, trial exhibits and jury instructions which will be due on February 20, 2019. This final pretrial order should fully comport with this opinion. Thereafter, this Court will set this matter for a priority trial date.

**CONCLUSION**

For these reasons, the parties' motions in limine are GRANTED in part and DENIED in part as stated herein. The final pretrial order shall be filed by February 20, 2019.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: February 6, 2019**